**DEREK SMITH LAW GROUP, PLLC**
TIMOTHY J. PROL, ESQUIRE
Attorney ID No. 319524
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(267) 857-0834
tim@dereksmithlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALBERT JOHNSON, SR., *individually and on behalf of others similarly situated,* | |
| **Plaintiff,** | |
| v. | |
| Delaware County Pennsylvania | |
| Jail Oversight Board of Delaware County Pennsylvania | |
| George W. Hill Correctional Facility | Civil Action No. |
| Kevin Madden, individually and in his official capacity as Delaware County Councilman and Chair of the Jail Oversight Board | **CLASS/COLLECTIVE ACTION COMPLAINT** |
| Laura Williams, Warden - individually and in her official capacity as chief administrator of the George W. Hill Correctional Facility | JURY TRIAL DEMANDED |
| Cheyenne Marquette, individually and in her official capacity as Human Resources Manager of the George W. Hill Correctional Facility | |
| **Defendants.** | |

1

## INTRODUCTION

PLAINTIFFS, by and through their attorneys, The Derek Smith Law Group, PLLC, hereby bring this civil action pursuant to 42 U.S.C. § 1983 and § 1988. This is a complaint for damages based upon federal civil rights violations and retaliation by DEFENDANTS against PLAINTIFFS. DEFGENDANTS, acting under color of State law, systematically and on a sustained basis violated PLAINTIFFS' rights under the First Amendment of the United States Constitution. PLAINTIFFS allege and aver in support thereof:

## NATURE OF THE CASE

1.      This action arises out of the unlawful and hostile violation of PLAINTIFFS' rights under the First Amendment by DEFENDANTS since DEFENDANTS subjected and/or caused to be subjected, PLAINTIFFS to the deprivation of myriad rights, privileges, and immunities secured by the Constitution and laws as set forth more fully below.

2.      By refusing, failing, and neglecting to deduct dues from DCPEIU Members, even after receiving more than one hundred (more than 100) signed cards directing her to do so, DEFENDANTS deprived them of their Constitutional right to freedom of speech, freedom of association, and freedom to petition under the First Amendment of the United States Constitution.

3.      PLAINTIFFS bring this action charging that DEFENDANTS violated PLAINTIFFS' rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, seeking damages to redress the injuries PLAINTIFFS suffered as a result of being wrongfully and unlawfully deprived of their rights by DEFENDANTS.

**PARTIES**

4.      PLAINTIFFS include Corrections Officers currently and formerly employed by DEFENDANT Delaware County as well as Corrections Officers formerly employed by DEFENDANT Delaware County through private subcontracting with Community Education Centers, Inc./The Geo Group.

5.      PLAINTIFFS listed in the caption of this action are almost two-hundred (200) Members of the Delaware County Prison Employees Independent Union and are citizens or residents of the United States of America and of the Commonwealth of Pennsylvania who have wrongfully been deprived of their civil rights under the First Amendment to the Constitution of the United States as a direct and proximate result of DEFENDANTS' official, targeted, and sustained actions.

6.      Common questions of law and fact involved in the legal dispute apply to all Plaintiffs and prospective Plaintiffs in the Class.

7.      Plaintiff Albert Johnson, Sr. is a Corrections Officer similarly situated to all Members of the prospective Class.

8.      DEFENDANT Delaware County is a public entity duly organized and existing pursuant to the laws of the Commonwealth of Pennsylvania with a business address at 201 West Front Street, Media, PA 19063.

9.      DEFENDANT Delaware County and its Council are empowered by Commonwealth of Pennsylvania law to operate and maintain the George Hill Correctional Facility located in Delaware County, PA.

10.      DEFENDANT Jail Oversight Board of Delaware County Pennsylvania (hereafter Jail Oversight Board or "JOB"), is located at 500 Cheyney Road Thornton, PA 19373 and has a mailing address of P.O. Box 23 Thornton, PA 19373.

11.      Chapter 86 of the Delaware County Code establishes and details the Jail Oversight Board, its scope, composition, powers and duties, and enumerates other administrative powers.

12.      The Jail Oversight Board is established according to the provisions of Title 61, Subchapter B, of the Pennsylvania Consolidated Statutes via Resolution No. 2019-12.

13.      The Jail Oversight Board's administrative powers and duties include the operation and maintenance of the George Hill Correctional Facility (the "jail") and all associated alternative housing facilities, the oversight of the health and safekeeping of inmates and the confirmation of the Executive Director's selection of a Warden.

14.      The Jail Oversight Board's operations are required to be consistent with law.

15.      The Jail Oversight Board is required to ensure that the jail is being operated in accordance with its regulations and the laws and regulations of the Commonwealth of Pennsylvania and of the United States of America.

16.      DEFENDANT George W. Hill Correctional Facility is the county correctional center for Delaware County, PA.

17.      DEFENDANT George W. Hill Correctional Facility is the primary facility where adults are held after arrest, while awaiting trial, or when serving a county sentence of fewer than two (2) years.

18.     DEFENDANT George W. Hill Correctional Facility is owned and operated by DEFENDANT Delaware County.

19.     At all times relevant, DEFENDANT Kevin Madden (hereafter DEFENDANT Madden) is on the County Council and is Chairman of the Jail Oversight Board.

20.     DEFENDANT Madden, as Chair of the Jail Oversight Board, had policymaking authority over DEFENDANT Williams and others, including Corrections Officers, staff, and administration in the George W. Hill Correctional Facility.

21.     DEFENDANT Laura Williams (hereafter DEFENDANT Williams) is the Warden of the George W. Hill Correctional Facility.

22.     At all times relevant, DEFENDANT Williams was empowered by the County of Delaware to enforce law, rules, regulations, policies, and procedures in the George W. Hill Correctional Facility.

23.     At all times relevant, DEFENDANT Williams was empowered to take official state action in her day-to-day tasks which included the administration and operation of the George W. Hill Correctional Facility.

24.     At all times relevant, DEFENDANT Williams took the actions she took as part of her professional duties and responsibilities.

25.     At all times relevant, the Commonwealth of Pennsylvania, through the authority of the Delaware County Commissioners, bestowed a mantle of authority upon DEFENDANT Williams that enhanced the power of her actions.

26.     At all times relevant, DEFENDANT Williams was an official of DEFENDANT Delaware County Pennsylvania and was acting under color of state law.

27.     At all times relevant, DEFENDANT Williams performed her actions against Plaintiffs while clothed with the authority of the state.

28.     At all times relevant, DEFENDANT Williams was acting in her official capacity and/or while exercising her responsibilities pursuant to state law.

29.     At all times relevant, DEFENDANT Williams was acting for work-related reasons.

30.     At all times relevant, DEFENDANT Williams's actions were related to her job as a government official.

31.     At all times relevant, DEFENDANT Williams's actions took place within the geographic area covered by DEFENDANT Williams's department.

32.     At all times relevant, DEFENDANT Williams used her official position to exert influence over the Plaintiffs.

## JURISDICTION AND VENUE

33.     This Court has subject matter jurisdiction over this matter as it involves a Federal Question under 42 U.S.C. §1983 and §1988. Jurisdiction is proper in the Eastern District of Pennsylvania based upon 28 U. S.C. §1331 and § 1343 (1-4).

34.     Venue is appropriate before this Court as Defendants reside in the Eastern District of Pennsylvania and all actions and omissions giving rise to this litigation occurred in the Eastern District of Pennsylvania.

## MATERIAL FACTS

35.    George W. Hill Correctional Facility is a publicly funded jail in Delaware County Pennsylvania. Prior to 1998 when GEO began its administration of jail operations, the jail was administered directly by Delaware County, Pennsylvania.

36.    The Warden of the George W. Hill Correctional Facility is appointed by the Delaware County Executive Director and is confirmed by the Jail Oversight Board.

37.    The Warden serves at the pleasure of the County Executive Director and the County Executive Director fixes the Warden's annual salary at a level deemed appropriate by the County Executive Director.

38.    The Warden reports to the Delaware County Executive Director and to the Jail Oversight Board.

39.    The Warden is required by law to give annual and monthly reports to the Jail Oversight Board regarding the population, conditions and practices in the jail and other matters as specified by the Board.

40.    From about 1998 through about April 2022 the public services of the George W. Hill Correctional Facility in Delaware County Pennsylvania were under private operation by Community Education Centers, Inc./The Geo Group (hereafter referred to as "Geo" or "Geo Group").

41.    The George W. Hill Correctional Facility under Geo's management employed around three-hundred-eight (308) Corrections Officers.

42.    The Collective Bargaining Unit of the Corrections Officers of the George W. Hill Correctional Facility is the Delaware County Prison Employees Independent Union (hereafter referred to as "Union" or "DCPEIU").

43. Prior to Geo's management and administration of the George W. Hill Correctional Facility on behalf of Delaware County Pennsylvania, a Collective Bargaining Agreement (CBA) existed between DCPEIU and Delaware County.

44. For the duration of Geo's operation of the George W. Hill Correctional Facility on behalf of Delaware County Pennsylvania, a Collective Bargaining Agreement (CBA) existed between Geo and DCPEIU, with the most recent incarnation of that agreement covering the years 2017 through 2020.

45. The CBA outlines the terms and conditions of employment for the Correctional Officers of the George W. Hill Correctional Facility.

46. In addition to outlining the terms and conditions of employment, including recognition of DCPEIU as the exclusive collective bargaining representative for all full-time and regular part-time Correctional Officers employed by Geo at the George W. Hill Correctional Facility, outlining the working hours, overtime provisions, paid time off, grievance procedures, among others, the CBA contained a provision which provides as follows:

ARTICLE 28. TERM

> 28.1 Except as otherwise provided herein, this Agreement becomes effective January 1, 2027 and shall continue in force and effect until midnight December 31, 2019 and from year to year thereafter unless either party receives written notice from the other party, not less than sixty (60) days, nor more than ninety (90) days, immediately prior to the expiration date, of its intention to amend, modify or terminate this Agreement, provided that if the Company shall cease to operate at this site, this Agreement shall automatically terminate and the rights and obligations of both the Union and the Company hereunder shall automatically cease, except with reference to those Officers covered herein shall remain in the employment of the Company for the purpose of performing work arising from the termination provisions of the Company's agreement with the Client, and as to such Officers, this Agreement shall continue in effect until termination of employment of such Officers.

Exhibit A at 29.

47.     On about April 6, 2022, Delaware County Pennsylvania re-assumed direct control of the George W. Hill Correctional Facility.

48.     By re-assuming direct control of the George W. Hill Correctional Facility, Delaware County assumed the management functions of the jail.

49.     On about January 31, 2022, the County Commissioners appointed Defendant Williams to serve as Warden of the George W. Hill Correctional Facility.

**<u>FREE SPEECH – REFUSING TO COLLECT AND REMIT UNION DUES</u>:**

50.     DCPEIU is the lawful and recognized majority bargaining organization for Delaware County Pennsylvania Corrections Officers.

51.     Immediately upon assuming control of the jail in about April, 2022, Defendants by-and-through the actions of DEFENDANT Williams unilaterally and impermissibly ceased collecting dues from DCPEIU Members despite these individuals being active dues-paying Members of the Delaware County Prison Employees Independent Union.

52.     Union Leadership repeatedly and consistently informed Defendants that this was a violation of Union Members' Rights yet Defendants persisted in violating those rights by refusing to deduct dues from DCPEIU Members and remitting them to the Union.

53.     Union Members signed around one-hundred-fifty (150) dues election cards directing Defendants to deduct dues on behalf of DCPEIU. (Exhibit A).

54.     These tactics were deliberately designed to weaken and attrit the Union to harm DCPEIU, its Members, and all Corrections Officers working at the George W. Hill Correctional Facility.

55.     These tactics irreparably harmed DCPEIU, its Members, and all Corrections Officers working at the George W. Hill Correctional Facility by making it difficult and in some cases impossible for the Union to counteract Defendants' unlawful actions and violations.

56.     In the context of Union membership, dues from Members constitutes an exercise of those Members' free speech rights. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2492, 201 L. Ed. 2d 924 (2018).

57.     In response to Defendants' continued refusal to deduct dues from Members who had elected to provide same to the Union, the Union circulated Election Cards to Membership (Attached as Exhibit B) which allowed DCPEIU Members to direct Defendants to honor their desire to have Defendants deduct dues and remit same to the Union.

58.     Still, even after additional Election Cards were submitted to Defendants expressing Members' desire to have their free speech heard by paying dues to DCPEIU, Defendants persisted in violating those directives and free speech rights.

## DEFENDANTS' KNOWLEDGE, PARTICIPATION, AND INDIFFERENCE TO DEFENDANT WILLIAMS' AND HER SUBORDINATES' ACTIONS:

59.     DEFENDANT Madden had actual knowledge of DEFENDANT Williams's violation of Plaintiffs' rights and DEFENDANT Madden acquiesced in those violations directly or by his inaction to prevent further violations of law and of the Constitution of the United States.

60.     DEFENDANT Madden acted with deliberate indifference to the consequences of DEFENDANT Williams's actions.

61.     DEFENDANT Madden, established and maintained a policy , practice or custom which directly caused the violation.

62.     DEFENDANT Madden has supervisory authority over DEFENDANT Williams and in his position as Chair of the Jail Oversight Board has influence and authority over DEFENDANT Jail Oversight Board and DEFENDANT George W. Hill Correctional Facility.

63.     DEFENDANT Madden was aware of DEFENDANT Williams's conduct and actions in her capacity as Warden of the George W. Hill Correctional Facility.

64.     DEFENDANT Williams made monthly reports to the Jail Oversight Board updating the Board Members and Council as a whole through the Jail Oversight Board of the actions she took as Warden of George W. Hill Correctional Facility.

65.     DEFENDANT Madden acquiesced to DEFENDANT Williams's actions at the jail.

66.     DEFENDANT Madden acquiesced to DEFENDANT Williams's actions in failing and refusing to collect dues from DCPEIU Members despite the Members providing DEFENDANTS with signed cards electing to have dues taken from their paychecks and remitted to DCPEIU.

67.     DEFENDANT Madden failed to institute any policy, training, or regulation which would have prevented DEFENDANT Williams from violating Plaintiffs' rights.

68.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and Defendant Delaware County's failure to institute a policy which enforced adherence to contractual provisions, norms, and laws of both the Commonwealth of Pennsylvania and of the United States of America involving the protection of public employees, including but not limited to adherence to the "status quo" doctrine, created an unreasonable risk that Plaintiff's constitutional due process protections would be violated.

69.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and Defendant Delaware County's failure to institute a policy which

11

enforced adherence to principles and laws involving Union rights, including Freedom of Speech, Freedom of Association, Freedom to Petition the Government, allowing Union Members to pay dues to a Union, and rights of Union representatives to represent and defend Union Members in administrative proceedings and to intercede on their behalf created an unreasonable risk that Plaintiff's constitutional rights under the First Amendment would be violated.

70.     DEFENDANT Madden, Defendant Jail Oversight Board, Defendant George W. Hill Correctional Facility, and DEFENDANT Delaware County never indicated at any meeting or in any report that they had concerns regarding the constitutionality of jail policies as it pertained to DCPEIU Members and George W. Hill Correctional Facility employees and as such were deliberately indifferent to the risk of violation of Plaintiffs' constitutional rights that a failure to adopt, implement, and adhere to such a policy would cause.

71.     Plaintiff's constitutional rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution were violated as a direct and proximate result of DEFENDANT Madden's failure to implement necessary and proper policies.

72.     DEFENDANT Madden was well-apprised of DEFENDANT Williams's actions at all times.

73.     DEFENDANT Williams made regular monthly reports to the Jail Oversight Board and had regular discussions with DEFENDANT Madden throughout her time leading up to her appointment as well as while she served as Warden during all times relevant to this matter.

74.     In these conversations, DEFENDANT Williams relayed her plans and actions regarding staffing, interactions with the Union, disciplinary matters, and discussed same with DEFENDANT Madden.

75.     DEFENDANT Madden in turn discussed these plans, actions, and administrative functions, and which included refusing and failing to collect dues as directed by DCPEIU Members.

76.     At all times relevant, DEFENDANT Madden was aware of DEFENDANT Williams's actions and approved thereof.

77.     At all times relevant, DEFENDANT Madden directly participated in DEFENDANT Williams' actions and was in close contact with DEFENDANT Williams regarding the actions she was taking against Union Members and George W. Hill Correctional Facility employees.

78.     DEFENDANT Delaware County maintained a custom of deficient hiring and staffing policies and practices in that no policies existed to protect the due process rights of public employees performing the public service of Corrections which had been subcontracted to Geo when those services were de-privatized.

79.     DEFENDANT Delaware County maintained a lack of an adequate training program for upper-level management regarding constitutional protections for public employees.

80.     DEFENDANT Delaware County maintained a lack of an adequate training policy to address labor-management issues, contractual requirements, and constitutional protections.

81.     DEFENDANT Delaware County maintained a lack of established protocols to ensure lawful labor-management relations.

82.     DEFENDANT Delaware County was aware that no policies existed to address staffing in the transition from privatized jail to de-privatized jail.

83.     DEFENDANT Delaware County was aware that no policies existed to train upper-level management staff, such as DEFENDANT Williams, in labor-management relations, contract

law principles (including the status quo doctrine), and constitutional rights and liberties enjoyed by public employees in the Commonwealth of Pennsylvania and United States of America.

84.     DEFENDANT Delaware County did not enact policies to address due process rights of public employees.

85.     DEFENDANT Delaware County did not enact policies to ensure that administrators of the George W. Hill Correctional Facility were properly versed in the principles of progressive discipline.

86.     DEFENDANT Delaware County did not modify any existing county policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

87.     The failure of Delaware County to enact any policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution directly and proximately resulted in the violations of Plaintiffs' rights implemented in her official capacity by DEFENDANT Williams.

88.     Defendant Delaware County, which is organized and incorporated under the laws of the Commonwealth of Pennsylvania and is subject thereto, was aware that policies and procedures for the operation and implementation of the George W. Hill Correctional Facility were necessary and required as a matter of law.

89.     DEFENDANT Delaware County was deliberately indifferent to the lack of these policies, as evidenced by the utter lack of discussion, inquiry, investigation, or oversight directed at DEFENDANT Williams and the lack of discussion in DEFENDANT Williams's reports to the County and to the Jail Oversight Board.

90.     The lack of adequate hiring and staffing policies and practices was known by DEFENDANT Delaware County but was not corrected despite the probability of harm to the constitutional rights of Corrections Officers at the George W. Hill Correctional Facility likely being infringed by the lack thereof.

91.     Defendant Jail Oversight Board maintained a custom of deficient hiring and staffing policies and practices in that no policies existed to protect the due process rights of public employees performing the public service of Corrections which had been subcontracted to Geo when those services were de-privatized.

92.     Defendant Jail Oversight Board maintained a lack of an adequate training program for upper-level management regarding constitutional protections for public employees.

93.     Defendant Jail Oversight Board maintained a lack of an adequate training policy to address labor-management issues, contractual requirements, and constitutional protections.

94.     Defendant Jail Oversight Board maintained a lack of established protocols to ensure lawful labor-management relations.

95.     Defendant Jail Oversight Board was aware that no policies existed to address staffing in the transition from privatized jail to de-privatized jail.

96.     Defendant Jail Oversight Board was aware that no policies existed to train upper-level management staff, such as DEFENDANT Williams, in labor-management relations, contract

law principles (including the status quo doctrine), and constitutional rights and liberties enjoyed by public employees in the Commonwealth of Pennsylvania and United States of America.

97.     Defendant Jail Oversight Board did not enact policies to address due process rights of public employees.

98.     Defendant Jail Oversight Board did not enact policies to ensure that administrators of the George W. Hill Correctional Facility were properly versed in the principles of progressive discipline.

99.     Defendant Jail Oversight Board did not modify any existing county policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution.

100.     The failure of the Jail Oversight Board to enact any policies to include protections against violations of public employees', specifically Corrections Officers at the George W. Hill Correctional Facility, constitutional rights to due process, freedom of speech, freedom of association, and freedom to petition the government under the First, Fifth, and Fourteenth Amendments to the United States Constitution directly and proximately resulted in the violations of Plaintiffs' rights implemented in her official capacity by DEFENDANT Williams.

101.     Defendant Jail Oversight Board, which is organized and incorporated under the laws of the Commonwealth of Pennsylvania and is subject thereto, was aware that policies and procedures for the operation and implementation of the George W. Hill Correctional Facility were necessary and required as a matter of law.

102.    Defendant Jail Oversight Board was deliberately indifferent to the lack of these policies, as evidenced by the utter lack of discussion, inquiry, investigation, or oversight directed at DEFENDANT Williams and the lack of discussion in DEFENDANT Williams's reports to the County and to the Jail Oversight Board.

103.    The lack of adequate hiring and staffing policies and practices was known by Defendant Jail Oversight Board but was not corrected despite the probability of harm to the constitutional rights of Corrections Officers at the George W. Hill Correctional Facility likely being infringed by the lack thereof.

104.    Absent policies to ensure the constitutional rights, including due process under the Fifth and Fourteenth Amendments to the United States Constitution, and the associational, free speech, and rights to petition the government under the First Amendment to the United States Constitution, these harms are likely to recur and continue (as evidenced by the most recent batch of Corrections Officers at the George W. Hill Correctional Facility who were terminated absent a Loudermill hearing or any departmental due process whatsoever as recently as the last quarter of 2023).

105.    DEFENDANT Williams was empowered by DEFENDANT Delaware County and Defendant Jail Oversight Board to administer the policies, goals, and authority of DEFENDANT Delaware County and Defendant Jail Oversight Board.

106.    DEFENDANT Williams, acting in her official capacity, made the deliberate choices to follow a course of action as it related to refusing to honor the directive of DCPEIU Members regarding the taking of dues and remitting same to DCPEIU.

## CLAIMS FOR RELIEF

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

### Count I
### 42 U.S.C. §1983
### Violation of First and Fourteenth Amendments - Freedom of Speech, Freedom of Association, Freedom to Petition
### *Plaintiffs v. All Defendants*

103.     Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

104.     The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech. The United States Supreme Court has held time and again that freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U. S. 705, 714, 97 S. Ct. 1428, 51 L. Ed. 2d 752 (1977); *see Riley v. National Federation of Blind of N. C., Inc*., 487 U. S. 781, 796-797, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988); *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U. S. 539, 559, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985); *Miami Herald Publishing Co. v. Tornillo*, 418 U. S. 241, 256-257, 94 S. Ct. 2831, 41 L. Ed. 2d 730 (1974); *accord, Pacific Gas & Elec. Co. v. Public Util. Comm'n of Cal*., 475 U. S. 1, 9, 106 S. Ct. 903, 89 L. Ed. 2d 1 (1986) (plurality opinion).

105.     The right to association for expressive purposes is likewise protected. *See Roberts v. United States Jaycees*, 468 U. S. 609, 623, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984); see also Pacific Gas & Elec., supra, at 12, 106 S. Ct. 903, 89 L. Ed. 2d 1. The Janus Court quoted, "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 642, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943) (emphasis added); *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463, 201 L.Ed.2d 924, 938 (2018).

106.     By willfully, deliberately, and unilaterally refusing to deduct the dues of Plaintiff and other similarly situated individuals, Defendants have violated Plaintiffs' constitutional rights under the First and Fourteenth Amendments.

107.     Due to Defendants' violations of Plaintiffs' constitutional rights by refusing to take dues they were directed to take, chiefly Plaintiffs' free speech and associational rights, the operational and representational capacity of Plaintiffs' Union, the Delaware County Prison Employees Independent Union (DCPEIU) was materially limited and interfered with by Defendants' deliberate and targeted actions thereby causing injury to Plaintiffs.

108.     Had Defendants refrained from violating Plaintiff's constitutional rights to freedom of speech, to petition, and to associate those injuries suffered by Plaintiffs would not have occurred.

109.     A favorable decision would redress the violations committed by Defendants by ensuring that Plaintiffs rights were protected and past harms were remedied because the Union would have the resources and wherewithal to redress Plaintiffs' grievances, appeals, and past injuries and to represent Members' interests and exercise of their free speech and associational rights moving forward.

110.    Plaintiffs incurred financial, reputational, and psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

111.    While acting under the color of the law, Defendants violated Plaintiffs' constitutional rights by unilaterally refusing to deduct dues which they were explicitly directed to deduct, which resulted in injury to Plaintiffs.

112.    Defendants' actions violated the constitutional rights guaranteed to Plaintiffs under the First Amendment.

113.    Defendants' actions were not taken in good-faith and were in violation of clearly established law.

114.    Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

115.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

116.    Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs" an award of punitive damages is appropriate to the fullest extent permitted by law.

## Count II
### 42 U.S.C. §1983
### *Monell* Liability.
### All Plaintiffs v. Delaware County Pennsylvania, Jail Oversight Board of Delaware County Pennsylvania, George W. Hill Correctional Facility

155.     Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

156.     Municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Case* 1:20-cv-00135-TSK  Document 19  Filed 01/15/21  Page 17 of 22  PageID #: 191 18  Cincinnati, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

157.     Plaintiffs incurred financial, reputational, and/or psychological harm as a direct result of Defendants' unconstitutional and unlawful actions.

158.     While acting under the color of the law, Defendants violated Plaintiffs' constitutional rights by condoning, failing to supervise, and ratifying the actions of Defendant Williams.

159.     Defendants' actions violated the constitutional rights guaranteed to Plaintiffs the First, Fifth, and Fourteenth Amendments.

160.     Defendants' actions were not taken in good-faith and were in violation of clearly established state and federal law and the Constitution of the United States.

161.     Defendants' actions were egregious, unnecessary, unreasonable, unlawful, and unjustified.

162.     As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

163.     Because Defendants' and possibly other employees, agents, and/or representatives of Defendants, were motivated by evil motive or intent and/or involved a reckless or callous indifference to the federally protected rights of the Plaintiffs" an award of punitive damages is appropriate to the fullest extent permitted by law.

**Count III**
**Intentional Infliction of Emotional Distress**
*All Plaintiffs v. Kevin Madden, Laura Williams, Cheyenne Marquette*

164.     Plaintiffs repeat, incorporate by reference, and realleges every allegation and every paragraph in this Complaint as if fully set forth herein at length.

165.     Defendants engaged in actions that were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

166.     Defendants acted with the intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from Defendants' outrageous conduct.

167.     Defendants' actions caused Plaintiffs to suffer severe emotional distress and other injury.

168.     The emotional distress Plaintiffs experienced was so severe, no reasonable person could be expected to endure it.

169.    As a direct and proximate result of the Defendants' unreasonable and unlawful actions, Plaintiffs have suffered and continue to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, disfigurement, and physical pain and suffering.

170.    The actions of Defendants against the Plaintiffs were carried out with (a) actual malice and/or (b) a conscious, reckless, and outrageous indifference to the health, safety, and welfare of others, thereby justifying an award of punitive damages to the fullest extent permitted by law.

## JURY DEMAND

PLAINTIFF demands a jury trial on all issues to be tried.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to PLAINTIFF's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS demand judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, equitable damages, liquidated damages, statutory damages, attorney's fees, costs, and

disbursement of action under 42 U.S.C. §1988 and otherwise, and for such other relief as the Court

deems equitable, just, and proper.

Respectfully submitted,

Date: <u>March 20, 2024</u>                    **DEREK SMITH LAW GROUP, PLLC**
                                          By: <u>*/s/ Timothy J. Prol, Esq.*</u>
                                          Timothy J. Prol, Esq.
                                          1835 Market Street, Suite 2950
                                          Philadelphia, Pennsylvania 19103
                                          Phone: (215) 391-4790
                                          tim@dereksmithlaw.com
                                          Attorneys for Plaintiffs